UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DANIEL J. LEVITAN,

      Plaintiff,

v.                              Case No. 3:12cv117/MCR/CJK

DAVID MORGAN, et al.,

      Defendants.

_____/

<u>ORDER and</u>
<u>REPORT AND RECOMMENDATION</u>

      This civil rights case, brought under 42 U.S.C. § 1983, is before the court upon defendant Morgan's motion for summary judgment.  (Doc. 230).[1]  Plaintiff Levitan has filed: (1) a "Motion for One Day Enlargement of Time to File Plaintiff's Opposition to Defendant's Motion for Summary Judgment" (doc. 266); (2) a "Verified Cross-Motion for Partial Summary Judgment and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (doc. 267); (3) a "One Time Motion to Exceed Page Limitations" (doc. 268) and; (4) a "Motion to File Cross Motion for Summary Judgment Out of Time" (doc. 269).  Morgan subsequently

_____

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

responded in opposition to plaintiff's cross-motion for partial summary judgment. (Doc. 270).

The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Plaintiff's "Motion for One Day Enlargement of Time to File Plaintiff's Opposition to Defendant's Motion for Summary Judgment" and "One Time Motion to Exceed Page Limitations" will be granted. Plaintiff's "Motion to File Cross Motion for Summary Judgment Out of Time" will be denied. Defendant Morgan's motion for summary judgment should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Levitan is an inmate of the Florida Department of Corrections currently confined at Century Correctional Institution. On January 17, 2014, Levitan filed the fifth amended complaint, the operative pleading in this action. (Doc. 58). The complaint alleges Sheriff David Morgan and five unknown deputies of the Escambia County Sheriff's Office ("ECSO") violated federal and state law by denying Levitan a fair trial in a state criminal prosecution. (*Id.*, p. 7). Specifically, Levitan claims Sheriff Morgan's practice of greeting prospective jurors and thanking them for their service impermissibly influenced the jurors in Levitan's case and contributed to a

conviction that was factually and legally insufficient.  (*Id.*, p. 7-8).  Based on these events, Levitan claims: (1) a denial of his Sixth Amendment right to a fair trial by Morgan; (2) a denial of his Fourteenth Amendment due process and equal protection rights by Morgan; (3) a "denial of Sixth and Fourteenth Amendment right to trial by jury, due process, equal protection" by the five unknown deputies of the ECSO; and (4) a violation of Article I, § 21 Fla. Constitution by all defendants.  (*Id.*, p. 17-20).  Fred Alford, Larry Aiken, Darlene Dickey, and Gerald Champagne were subsequently added as defendants.  (Docs. 63, 65).  Alford, Dickey, and Champagne have been dismissed from the case (docs. 105, 124, 156) and Aiken has not been served.

The parties commenced discovery on October 1, 2014.  (Doc. 125).  Morgan moved for summary judgment on August 6, 2015, asserting his actions cannot give rise to any recovery by plaintiff.  (Doc. 230).  After a supplemental period of discovery (doc. 232), Levitan responded to Morgan's motion for summary judgment on January 12, 2016.  (Doc. 267).

## FACTS

The facts pertinent to the resolution of Sheriff Morgan's motion are drawn from plaintiff's verified fifth amended complaint (doc. 58) and the evidence in the summary judgment record (docs. 230, 267).  *See Perry v. Thompson*, 786 F.2d 1093,

1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to summary judgment).  Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff."  *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d1262, 1265 (11th Cir. 2005).

Defendant David Morgan is the elected Sheriff of Escambia County, Florida. (Doc. 230-1, p. 1).  He was elected in November of 2008 and sworn in as Sheriff in January of 2009.  (*Id.*).  Before his election as Sheriff, Morgan "regularly went to the juror parking area, located near the Civic Center, Pensacola, Florida, on each jury selection day."[2]  (*Id.*).  Located at the intersection of Gregory and Alcaniz Streets, "[t]he juror parking area is where prospective jurors for Escambia County Circuit Court and County Court are directed to park their vehicles and be transported by bus to the Escambia County Courthouse."  (*Id.*).  At the juror parking area, Morgan introduced himself to as many potential jurors as possible, thanked them for appearing to serve as jurors, and provided them with his business card.  (*Id.*).  After he was sworn in, Morgan, in his Sheriff's uniform, continued this practice .  (*Id.*; doc. 267-3, 29).

---

[2] In Escambia County, jury selection day is on Monday or, in the event Monday is a holiday, Tuesday.  (Doc. 230-1, p. 1).

The Escambia County Clerk's Office invited Sheriff Morgan to speak to prospective jurors at the Escambia County Courthouse jury assembly area beginning on August 31, 2010.  (Doc. 230-1, p. 1).   Before that date, "it was customary for Chief Circuit Judge Terry Terrell to speak to the pool of prospective jurors each Monday (or Tuesday, if Monday is a holiday) regarding the jury trial process."  (*Id.*). Because Judge Terrell was unable to speak to the prospective jurors on August 31, 2010, Sheriff Morgan was invited to speak in the judge's absence.  (*Id.*).   Morgan "was told that [he] was invited because many prospective jurors had made positive comments to the Clerk's staff regarding [his] greeting the prospective jurors at the juror parking area." (*Id.*).  Accordingly, Morgan "made brief remarks" that "included such comments as thanking jurors for reporting to serve as jurors, reminding jurors of the importance of the jury trial system in our constitutional system of justice, and impressing upon them the importance of their service, and the degree of power within their hands as jurors." (*Id.*, p. 1-2).  Morgan was invited to continue to address the prospective jurors at the courthouse and did so regularly from August 31, 2010, to October 18, 2010.  (*Id.*, p. 2).

On September 17, 2010, attorney J. Christopher Klotz wrote a letter to Circuit Court Judge Terry Terrell on behalf of the Society of the Criminal Defense Bar.

(Doc. 230-2).   In the letter, Mr. Klotz expressed concern that Sheriff Morgan's

contact with prospective jurors had "a great potential for harmful impact on citizens

on trial in Escambia County." (*Id.*, p. 1).  Klotz requested that Judge Terrell "curb the

inappropriate contact of the Sheriff with prospective jurors."   (*Id.*).   The letter

continued:

> It is true that the duties of the Office of Sheriff bring him, through
> deputies, in contact with prospective jurors as the Office oversees juror
> coordination and safety.  This obligation of the Sheriff's office does not
> constitute an invitation to influence the jurors for any purpose benign or
> not.  The only possible reason that Escambia's chief law enforcement
> officer could want to personally meet prospective jurors is to make some
> type of impression or impact.  This may be a design to bolster his
> Office's or his deputies' credibility or reputation.  It may be an effort to
> campaign by connecting with voters on a highly personal level.  Neither
> of these purposes is appropriate to this venue.  No conceivable purpose
> could outweigh the potential for prejudice to a person whose freedom is
> at stake in a criminal trial.

(*Id.*, p. 1-2).  James Owens, the Public Defender for the First Judicial Circuit, sent a

similar letter to Judge Terrell on October 28, 2010.  (Doc. 230-3).  Owens requested

that Judge Terrell end Sheriff's Morgan's meetings both at the civic center and in jury

assembly "to stop the intrusion of unacceptable external factors that may influence

potential jurors."   (*Id.*, p. 2-3).   Owens also identified case law and statutory

provisions he believed supported the request.  (*Id.*, p. 1-2).

After speaking with Morgan on the phone concerning the defense bar's objections, (doc. 267-3, p. 33), Judge Terrell issued a response to Klotz's and Owens' letters on October 29, 2010.  (Doc. 230-4).  Judge Terrell indicated Sheriff Morgan had agreed to comply with Judge Terrell's request that Morgan cease greeting jurors in the jury assembly room.  (*Id.*, p. 2).  The judge, however, declined to request that Morgan discontinue the meetings at the juror parking area because "none of the information provided to date discloses anything other than basic contact."  (*Id.*).  Judge Terrell noted the parking lot is a public place and stated "[i]f voir dire by capable counsel and the presiding judge discloses information that affects the integrity of a trial the presiding judge can resolve the issue."  (*Id.*, p. 2-3).

After receiving copies of the letters from Klotz, Owens, and Judge Terrell, Sheriff Morgan wrote a response to Judge Terrell on November 4, 2010.  (Doc. 230-5).  Morgan denied his actions were intended "to gain some advantage in the judicial process" and argued he "assiduously refrain[ed] from any contact that could be characterized in any was as any effort to influence any juror in any way regarding his or her serving as a juror."  (*Id.*, p. 1).  Morgan went on: "Barring any compelling legal authority, it is my intent to fully exercise the authority (constitutional) and prerogatives of the Office of Sheriff.  This will include, but not be limited to; being

present at jury assemblies (trolley and courthouses); opening the court (i.e., "all rise")

to prospective jurors, and to announce the Chief Judge, Clerk of Court as they begin

the initial selection process, and to address the assemblage," including "thanking

citizens for answering the jury summons, presenting a security briefing on entering

the facility and restrictions on their movement throughout the courthouse, and

advising them to contact me or my staff if they have any issues during their tour of

duty." (*Id.*, p. 1-3).

      Judge Terrell responded to Sheriff Morgan's letter via email on November 5,

2010.  (Doc. 230-6).  The judge addressed several points raised by Morgan and

concluded his response by noting "the request that you not greet jurors in jury

assembly remains in effect."  (*Id.*).  Sheriff Morgan stopped greeting prospective

jurors in jury assembly at the courthouse, but continued to meet with them at the

parking lots near the Civic Center.  (Doc. 230-1, p. 2).

      On Monday, February 21, 2011, jury selection took place in *State of Florida*

*v. Daniel J. Levitan*, Case No. 2009 CF 001932A.  (Doc. 230-7, p. 5; doc. 230-8, p.

1).  During voir dire, the following exchange took place between Mr. Richbourg,

Levitan's criminal defense attorney, and prospective jurors:

> Mr. Richbourg:    Basically we're about to – there was a practice that
>                    was going on; I don't know if it still is.  As you

> came to court this morning to report for jury duty, did anybody from the sheriff's office or any law enforcement agency greet you as you came in or anything?

Prospective Juror: The sheriff greeted us at the civic center.

Mr. Richbourg: Sheriff Morgan.

Prospective Juror: Yes, and said thanks for serving on the jury.

Prospective Juror: At the trolley.

Mr. Richbourg: Just said thanks for [serving] on the jury?

Prospective Juror: Yes. That's all he said.

Mr. Richbourg: Did all of have you that experience?

Venire Panel: Yes.

Prospective Juror: Probably everybody.

Mr. Richbourg: Did that make you in favor of law enforcement or more?

Prospective Juror: No.

(Doc. 230-8, p. 2-3). Mr. Richbourg did not ask each of the jurors individually if they met with Morgan because "he was afraid there would be a spillover effect by him doing it instead of the judge." (Doc. 230-11, p. 7). After the entire panel was asked additional questions, Mr. Richbourg and the prosecutor individually questioned several prospective jurors at the bench concerning their arrest histories and medical issues. (Doc. 230-8, p. 4-19). The parties exercised their challenges and selected six jurors and an alternate. (*Id*., p. 6-19). Following jury selection, the judge, Mr.

Richbourg, and Levitan discussed Morgan's actions again:

Mr. Richbourg: My client wants to impose an objection to the venire itself for the sheriff appearing out front and greeting them and so forth.

The evidence is that he indicated is that it's favorable to law enforcement and so forth. And, of course, in criminal cases law enforcement is in every case. So we just want to make that objection part of the record.

The Court: Here is my ruling on that. Number one, I allowed you to ask any questions you wanted to about that and about whether or not that would taint any biases or prejudices. And there was nobody that indicated, to my knowledge, that that was the case. So I understand his objection. I'm going to overrule it at this point.

Mr. Levitan you've participated, however, throughout this entire jury selection process with your attorney; is that right?

The Defendant: Yes.

The Court: And are you satisfied with the jury that's a been selected in your case, other than the objection that –

The Defendant: Other than the objection, that's fine.

(Doc. 230-8, p. 19-20).

Levitan's criminal trial for second-degree grand theft began on February 24, 2011. (Doc. 230-7, p. 5). Sheriff Morgan did not testify at the trial. (Doc. 230-11, p. 16). At the close of the prosecution's case, Levitan moved for judgment of

acquittal; the judge took the motion under advisement for a later ruling. Initial Brief of Appellant, 2012 WL 12247242 at *11, *Levitan v. State*, 100 So.3d 776 (Fla. 1st DCA 2012). Levitan renewed his motion for judgment of acquittal after the defense rested and the state presented its case in rebuttal. *Id.* at *15. The judge denied the motion. *Id.*; (doc. 230-7, p. 6). On February 25, 2011, the jury returned a guilty verdict. (Doc. 230-7, p. 6). Levitan appealed the conviction to the First District Court of Appeal, arguing "the trial court erred in denying his motion for judgment of acquittal because the State's evidence was legally insufficient under section 812.014, Florida Statutes, to show he either deprived or appropriated to the use of other not entitled to it, certain 'property' belonging to Total Employee Leasing (TEL) as specified in the information." *Levitan*, 100 So. 3d at 777. Specifically, Levitan claimed: "(a) the State failed to establish he had felonious intent in issuing the undated check; (b) TEL was not deprived of a property right or that Appellant did not appropriate the property to his use or to the use of any person not entitled to it.; and (c) no theft of property as defined and charged in the information occurred during November 2008." *Id.* at 778-79. The appellate court agreed with the latter two points and reversed the conviction.[3] *Id.* at 779-81.

---

[3] Levitan was later convicted of ten counts of grand theft and one count of aggravated white collar crime in *State of Florida v. Daniel J. Levitan*, 2009 CF 003786A. He is currently incarcerated

On March 3, 2011, Judges M. Casey Rodgers, Roger Vinson, and Lacey Collier of the U.S. District Court for the Northern District of Florida wrote a letter to Sheriff Morgan regarding his practice of greeting and interacting with prospective jurors.[4] (Doc. 230-9).   The letter notified Morgan that, like the state court, the federal court also utilized the parking area near the civic center "for the parking and transport of prospective jurors to the courthouse for jury selection via the city trolley service." (*Id.*).   These federal judges became aware of Morgan's actions when a prospective juror appeared for jury duty in court with Morgan's business card.   (*Id.*).   The letter summarized the judges' concerns about Morgan's actions:

> Your interactions with these prospective jurors raise legitimate concerns about the court's ability to seat fair and impartial juries, especially when considering that the majority of those selected will serve on criminal juries.  The potential for bias created by a senior elected public law enforcement official greeting prospective jurors and handing out business cards to them just prior to jury selection is undeniable, as is the disruption to our local criminal justice system that would result if the court were unable to seat fair and impartial juries to hear these trials.  Even if no actual bias results, the court nonetheless is concerned that your practice at a minimum gives the appearance of bias, which in our view seriously undermines the public's confidence in the

as a result of these convictions.  *See State v. Levitan*, 115 So.3d 1065 (Fla. 1st DCA 2013); *see also* Florida Department of Corrections, Corrections Offender Network, Offender Information Search, http://www.dc.state.fl.us/AppCommon/.

[4] These events occurred after the conclusion of Levitan's trial and thus are not relevant to determining whether Morgan's actions deprived Levitan of a fair trial in February of 2011.  The court provides these additional facts only to offer the reader a complete narrative.

fair administration of justice.

(*Id.*).  "[I]n an effort to ensure the fair and equal administration of justice to all who appear in federal court," the federal judges requested that Morgan "refrain from any further contact with our court's prospective jurors."  (*Id.*).

Morgan responded to the federal judges' letter on March 17, 2011.  (Doc. 267-2, p. 2-4).  He  described the comments he made to prospective jurors:

> Good Morning, I'm Sheriff David Morgan.  I attempt to get down here on as many Monday's as possible to thank you for answering the jury summons.  I know that this a disruption of your business or personal day, but you are an integral part of the judicial process.  Thank you for your service.

(*Id.*, p. 2).  Morgan then explained the reason he greeted prospective jurors and why he believed it was harmless:

> I continue this practice of putting a complimentary face on law enforcement for the antithesis of a prospective juror failing to respond (voluntarily) to a jury summons is getting to see 'the sheriff' by virtue of an arrest warrant.  The extent of my contact with any particular prospective juror is *de minimis*.  I submit that the likelihood that my greeting creates any 'bias' in a prospective juror is infinitesimal.

(*Id.*).  Morgan reiterated his position that any potential for bias could be explored during voir dire.  (*Id.*, p. 3).  He also suggested the federal judges' concerns could be alleviated by having "prospective federal jurors report directly to the Federal Courthouse," contacting the local transit authority for a separate trolley, or

"direct[ing] prospective jurors to have no contact with" Sheriff Morgan.  (*Id.*).

Morgan indicated his "legal team ha[d] not found any legal authority that would

compel [him] to alter this practice" and stated: "Absent some showing that my

practice actually results in some negative impact on prospective jurors, I do not

believe that there is a valid basis for imposing limitations on my rights to free speech

or free association and constitutionally mandated authority." (*Id.*, p. 4).

A week later, on March 24, 2011, Sheriff Morgan issued letters to Judge

Vinson, Judge Terrell, and State Attorney Bill Eddins. (Doc. 267-2, p. 6-8). Morgan,

citing the need to avoid "an impending media circus," announced he was immediately

discontinuing his practice of greeting prospective jurors. (*Id.*). He asserted he would

"not be a player to a diminution or denigration of the judicial process." (*Id.*). Morgan

indicated he was "fully confident that this issue would eventually result in a favorable

ruling by the courts," but felt it was "not prudent to hobble the Offices of the State

Attorney, and the courts in hearing after hearing in motions to suppress, dismiss, etc."

(*Id.*). Morgan expressed his disagreement with efforts to paint his conduct as "an

insidious assault and an attempt to skew the outcome of a trial(s)." (*Id.*). Morgan

concluded by noting he found the whole situation "despicable." (*Id.*).

Thus, Morgan discontinued greeting and thanking jurors at the parking lots near the Civic Center as of March 24, 2011.[5]  (*Id.*; doc. 267-3, p. 80-82).  Sheriff Morgan does, however, continue to call court into session each Monday, which involves instructing the jury pool to stand, announcing that court is in session, and introducing the clerk of court.  (Doc. 267-3, p. 7).

DISCUSSION

I.    Preliminary Matters

Some preliminary matters appear for resolution before turning to the merits of defendant Morgan's motion for summary judgment.    Instead of filing a straightforward (and timely) response to Morgan's motion, Mr. Levitan submitted a 47-page document titled "Plaintiff's Verified Cross-Motion for Partial Summary Judgment and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment."  (Doc. 267).   The document consists of: (1) a section concerning judicial estoppel; (2) a cross-motion for summary judgment; and (3) a response in opposition to Morgan's motion for summary judgment.  (Doc. 267); *see also* (doc. 268) (describing the filing).  Levitan claims "[t]he filing also is a verified

---

[5] Levitan asserts "[t]he meetings with Morgan continued as late as February 13, 2012 as confirmed by a jury array in *State v. Levitan*, Case No. 2009-CF-003786A, through a show of hands."  (Doc. 267, p. 7).  Because both dates occurred after Levitan's February 2011 trial concluded, this factual dispute is not material to the resolution of the motion for summary judgment.

motion replacing the need for separate affidavits by the Plaintiff attesting to facts or affirming the facts under oath in separate affidavits[.]" (Doc. 268, p. 2).  In addition, the document fails to distinguish between Levitan's cross-motion for summary judgment and his response to Morgan's motion for summary judgment.  For the reasons provided below, Levitan's motion to file the untimely cross-motion for summary judgment will be denied and his argument regarding judicial estoppel will be rejected.  The court will, however, consider the arguments contained throughout the filing in ruling on Sheriff Morgan's motion for summary judgment.

A.     Motion to File Cross Motion for Summary Judgment out of Time

Levitan requests that he be allowed to file a cross-motion for summary judgment beyond the deadline for filing dispositive motions.  (Doc. 269).  He indicates the filing of Morgan's motion for summary judgment requires him to file a cross-motion for summary judgment "as it relates to the facts admitted by the Defendant in his motion."  (*Id.*, p. 1).

Morgan's motion for summary judgment has been pending since August 6, 2015.  (Doc. 230).  The dispositive motion deadline was subsequently extended to October 22, 2015.  (Doc. 232).  The court issued an order on October 23, 2015, informing the parties Morgan's motion for summary judgment would be taken under

advisement on November 23, 2015.  (Doc. 258).  Levitan was directed to file a response to the motion for summary judgment on or before November 23, 2015.  (*Id.*). The court subsequently granted Levitan a thirty-day extension and seven-day extension of time in which to file his response.  (Docs. 261, 265).  Despite the considerable amount of time that elapsed since the filing of Morgan's motion for summary judgment, Levitan waited until January 12, 2016, to file what he describes as a cross-motion for summary judgment.  Levitan has not demonstrated his failure to file a timely cross-motion for summary judgment was the result of excusable neglect.  *See* Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). Mr. Levitan's motion, therefore, will be denied.  As noted above, all argument and factual matter advanced by Levitan in the "Verified Cross-Motion for Partial Summary Judgment and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment" (doc. 267) will be considered in ruling on Sheriff Morgan's motion for summary judgment.

B.     Judicial Estoppel

In the "Verified Cross-Motion for Partial Summary Judgment and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment," Mr. Levitan asserts Morgan should be estopped from now claiming his actions did not influence jurors when he previously wrote in a letter to federal judges that he was attempting to put a complimentary face on law enforcement. (Doc. 267, p. 7-17). As indicated in the Facts section, District Judges Rodgers, Vinson, and Collier wrote a letter to Morgan requesting that he cease greeting prospective jurors. Morgan's reply described the comments made to prospective jurors and the rationale behind those comments: "I continue this practice of putting a complimentary face on law enforcement for the antithesis of a prospective juror failing to respond (voluntarily) to a jury summons is getting to see 'the sheriff' by virtue of an arrest warrant." (Doc. 267-2, p. 2).

The doctrine of judicial estoppel prevents a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (citation omitted). Although "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of

principal," courts typically consider: "(1) whether the present position is 'clearly inconsistent' with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party." *Id.* (*citing New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

Mr. Levitan's estoppel argument has no merit. Morgan's "complimentary face on law enforcement" statement was not made under oath or in the context of a judicial or administrative proceeding. *See id.* ("First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.") (*quoting Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001)). Moreover, the statements found within Morgan's March 17, 2011 letter are not "clearly inconsistent" with his position in this litigation. Here, Morgan argues he did not violate Levitan's right to a fair trial because he did not influence or tamper with prospective jurors. Although Levitan emphasizes the "complimentary" statement, other portions of the letter make it clear Sheriff Morgan did not believe his conduct created bias in prospective jurors. *See* (Doc. 267-2, p. 2-3) ("The extent of my

contact with any particular prospective juror is *de minimis*. I submit that the likelihood that my greeting creates any 'bias' in a prospective juror is infinitesimal."; "Absent some showing that my practice actually results in some negative impact on prospective jurors, I do not believe that there is valid basis for imposing limitations on my rights to free speech or free association and constitutionally mandated authority."). Lastly, Morgan appears to have written the "complimentary" statement to explain why he greeted prospective jurors. The current litigation, and at least part of the resolution of this case, focuses on the effect Morgan's meetings had on prospective jurors rather than his motivations for engaging in the practice.

II.   <u>Morgan's Motion for Summary Judgment</u>

   A.   Summary Judgment Standard

   Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *Id.*  An issue is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party.  *Id.*  Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).  Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).  Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is

'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).

B.     Sixth Amendment[6]

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]"  U.S. Const. Amend. VI.  "The Fourteenth Amendment incorporates the essence of the Sixth Amendment right to be tried 'by a panel of impartial, "indifferent" jurors [whose] verdict must be based upon the evidence developed at the trial.'"  *Woods v. Dugger*, 923 F.2d 1454, 1457 (11th Cir. 1991) (*quoting Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)); *see also id.* ("The due process clause of the Fourteenth Amendment guarantees the right of state criminal defendants to be tried by an impartial jury.").  "To safeguard these rights, a district court must be alert to factors that may undermine the fair trial process."  *United States v. Wilson*, — F. App'x —, 2015 WL 8956435, at *10 (11th Cir. Dec. 16, 2015) (*citing Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976) *and Woods*, 923

---

[6] Nether the parties nor the undersigned has found case law addressing a § 1983 claim where the plaintiff seeks damages from a law enforcement official for influencing prospective jurors in the plaintiff's criminal trial.  For purposes of this action, the court will assume the § 1983 standard is the same standard applicable to a criminal defendant's challenge to the validity of his conviction.

F.2d at 1456).  The trial court "must closely scrutinize any practice affecting the trial process, evaluating its likely impact on the judgment of jurors based on 'reason, principle, and common human experience.'"  *Id.* (*quoting Estelle*, 425 U.S. at 504).

For a criminal defendant "to prevail on his claim of being denied a fair trial he must show either actual or inherent prejudice."  *Woods*, 923 F.2d at 1457 (*citing Holbrook v. Flynn*, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986)).  "Claims that the jury was not impartial must focus on the jurors who actually sat."  *Spivey v. Head*, 207 F.3d 1263, 1273 (11th Cir. 2000).

In his motion for summary judgment, Sheriff Morgan asserts his practice of greeting prospective jurors[7] at the parking lots near the Civic Center, thanking them for their service, and providing them with his business card did not violate Levitan's right to a fair trial because his actions did not result in either actual or inherent prejudice.  To show actual prejudice, a plaintiff must demonstrate that the jurors in his criminal case believed he was guilty as a result of the defendant's actions *and* that

---

[7] Citing *Nobles v. State*, 769 So. 2d 1063 (Fla. 1st DCA 2000), Levitan argues the prospective jurors who met with Morgan at the parking lots near the Civic Center should be considered "jurors." (Doc. 267, p. 17).  In *Nobles*, the court concluded the term "juror" in Florida's jury tampering statute–section 918.12, Florida Statutes–"necessarily refers to prospective jurors as well as active jurors."  769 So. 2d at 1065.  For the sake of clarity, and to reflect that Morgan did not interact with the jurors in Levitan's case after they were selected, the individuals at the parking lot will be referred to as prospective jurors.

those jurors were unable to put aside that opinion and return a verdict based on the evidence at trial. In order to establish inherent prejudice, a plaintiff must demonstrate that the defendant's actions constituted an impermissible factor that created a probability of deleterious effects. Proof of inherent prejudice demands an extremely high standard.

### 1.    Actual Prejudice

First, Sheriff Morgan argues Levitan cannot demonstrate Morgan's conduct resulted in actual prejudice. "To find the existence of actual prejudice, two basic prerequisites must be satisfied. First, it must be shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty. Second, these jurors, it must be determined, could not have laid aside these preformed opinions and rendered a verdict based on the evidence presented in court." *Coleman v. Zant*, 708 F.2d 541, 544 (11th Cir. 1983) (*citing Irvin*, 366 U.S. at 723, 727).

Mr. Levitan has failed to establish actual prejudice because he identifies no evidence the jurors at his trial prejudged him to be guilty or that they "could not have laid aside these preformed opinions and rendered a verdict based on the evidence presented in court." Morgan submitted evidence–the transcript of voir dire–that

shows, based on responses to questions under oath, the jurors selected in Levitan's criminal case were not prejudiced by their contact with Morgan.  (Doc. 230-8); *see Irvin*, 366 U.S. at 723 ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.") (citations omitted).

Levitan has submitted nothing to contravene Morgan's evidence.  Instead, Levitan relies upon speculation concerning the effects Morgan's actions might have had on the jury in his criminal case.  *See e.g.*, (Doc. 267, p. 22) ("How his practices actually interfered with the judicial process are open questions for a jury.").  At the summary judgment stage, however, the nonmoving party cannot rely on conjecture. *See Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010) (noting that the court, in evaluating a summary judgment motion, will not "draw *unreasonable* inferences or credit bald assertions, empty conclusions, [or] rank conjecture") (*quoting Cabán Hernádez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)).  Levitan's view would allow jurors to reach a conclusion for which no supporting evidence exists. The summary judgment vehicle serves to prevent such standardless adjudication of

fact issues.

In short, no evidence shows or tends to show that Morgan's actions contributed in any way to Levitan's conviction. (Doc. 230, p. 14-15). The claim that Morgan's conduct caused Levitan's conviction is also belied by the fact the judge presiding over the trial denied Levitan's motion for judgment of acquittal. *See Levitan*, 100 So.3d at 778 (Levitan "moved for judgment of acquittal, arguing that no theft of currency or other property occurred due to the issuance of the undated check in November as charged in the information. The trial court denied the motion."). By denying the motion, the trial judge, like the jury, concluded the prosecutor's evidence was sufficient to support a conviction. The judge's denial of the motion, despite the subsequent reversal on appeal, suggests the jury's guilty verdict was not clearly unreasonable or motivated by prejudice.

Interestingly, although he now claims Sheriff Morgan's actions resulted in his conviction, Levitan did not raise a fair trial claim on appeal. *See* Initial Brief of Appellant, 2012 WL 12247242, *Levitan v. State*, 100 So. 3d 776 (Fla. 1st DCA 2012). Likewise, his conviction was not reversed on that ground and the appellate court did not offer any comment on the issue. *Levitan v. State*, 100 So. 3d 776 (Fla. 1st DCA 2012). Levitan has failed to present evidence that Morgan's conduct caused the

conviction. *See Weller v. United States*, 379 F. App'x 910 (11th Cir. 2010) (finding district court's grant of summary judgment appropriate when plaintiff presented no evidence of causation).

Mr. Levitan vigorously argues that voir dire failed to root out the prejudice allegedly created by Morgan's actions because jurors were not questioned individually about their contact with Morgan and its effect on them. After the jury panel indicated Morgan's greeting would not influence them, Mr. Richbourg chose not to ask the prospective jurors any additional questions; when Levitan's objection to the venire was overruled, the trial judge specifically stated: "I allowed you to ask any questions you wanted to about that and about whether or not that would taint any biases or prejudices. And there was nobody that indicated, to my knowledge, that that was the case." (Doc. 230-8, p. 20). Although Levitan now claims "[t]he trial court failed in its duty to determine juror impartiality," (doc. 267, p. 21 n.17), Levitan has not presented evidence the judge prohibited or stifled either collective or individual voir dire.

Levitan claims he declined to ask additional questions about Morgan's conduct because he was concerned about "spillover effect" and potential prejudice. He fails to explain, however, how additional questioning could have resulted in prejudice to

the defense.  Also, criminal defendants and their lawyers deal each day with the issue of whether sharper focus on a perceived problem in the trial might simply highlight the problem.  That type of decision is at the core of the give and take of trial. Typically, defendants request individual voir dire in situations where collective questioning could expose the entire venire to unfavorable information such as pretrial publicity involving the alleged crime or the defendant.  As noted, such did not happen.

### 2.   Inherent Prejudice

Next, Sheriff Morgan argues Levitan has "failed to demonstrate that Morgan caused inherent prejudice by greeting prospective jurors."  (Doc. 230, p. 15).  "The test for inherent prejudice is 'not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether an unacceptable risk is presented of impermissible factors coming into play."  *Woods*, 923 F.2d at 1457 (*quoting Holbrook*, 475 U.S. at 570).  The court, therefore, must examine two factors: (1) whether an impermissible factor came into play; and (2) whether the impermissible factor posed an unacceptable risk.  *Id.*  "[A] risk becomes unacceptable when there is a 'probability of deleterious effects.'"  *Id.* (*quoting Estelle*, 425 U.S. at 504).  The Eleventh Circuit has observed that inherent or "presumed prejudice rarely occurs and

'is reserved for extreme situations.'" *Id.* at 1459 (*quoting Bundy v. Dugger*, 850 F.2d 1402 (11th Cir. 1988)).

Courts have found inherent prejudice in cases involving, singly or in combination, unfavorable pretrial publicity, *Coleman*, 708 F.2d at 544 ("Prejudice is presumed from pretrial publicity when (1) pretrial publicity is sufficiently prejudicial and inflammatory, and (2) the prejudicial pretrial publicity saturated the community where the trials were held.") (*citing Rideau v. Louisiana*, 373 U.S. 723, 726-27, 83 S. Ct. 1417, 10 L. Ed. 2d 663 (1963)), a restrained defendant, *Holbrook*, 475 U.S. at 568 (noting that shackling is inherently prejudicial and "should be permitted only where justified by an essential state interest specific to each trial"), or an atypical courtroom presence–whether law enforcement or otherwise, *Woods*, 923 F.2d at 1459-60 (finding inherent prejudice and granting habeas relief to defendant convicted of murdering correctional officer based on pretrial publicity and presence of uniformed correctional officers in the gallery during trial; noting it appeared the officers wanted to communicate the message to the jury that they "wanted a conviction followed by the imposition of the death penalty"); *Norris v. Risley*, 918 F.2d 828, 830 (9th Cir. 1990) (finding spectators at a kidnapping and rape trial who were wearing buttons inscribed with the words "women against rape" posed an

impermissible factor, "[b]ecause the buttons . . . conveyed an implied message encouraging the jury to find Norris guilty, and because the buttons were not subject to the constitutional safeguards of confrontation and cross-examination"). The common denominator in these cases is that the "impermissible factor" tends to suggest the particular defendant is guilty and undermine the presumption of innocence. *See e.g.*, *Holbrook*, 475 U.S. at 571 (finding presence of four armed uniformed state troopers not inherently prejudicial and noting "we cannot believe that the use of the four troopers tended to brand [the defendant] in [the jurors'] eyes with an unmistakable mark of guilt.") (citation and quotation omitted); *Parker v. Gladden*, 385 U.S. 363, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1966) (recognizing the "extreme prejudice inherent" in bailiff's comments to jurors, such as "Oh that wicked fellow he is guilty"). A similar line of cases holds that comments made to jurors *during* a trial concerning the matter pending before the jury creates a rebuttable presumption of prejudice. *See United States v. Ronda*, 455 F.3d 1273, 1299 (11th Cir. 2006) ("The defendant has the burden to show that the jury has been exposed to extrinsic evidence or extrinsic contacts. Once the defendant establishes that such exposure in fact occurred, prejudice is presumed and the burden shifts to the government to rebut the presumption.").

Case No. 3:12cv117/MCR/CJK

A number of factors lead the undersigned to conclude Sheriff Morgan's conduct did not create inherent prejudice.  *See Wood*, 923 F.2d at 1457 (noting courts should examine the "totality of circumstances" to evaluate the fairness of a trial). First, Morgan's interactions were with prospective jurors and did not reference Levitan's case or any matters the prospective jurors might be called upon to hear. (Doc. 267-3, p. 84); *cf. Remmer v. United States*, 347 U.S. 227, 229, 74 S. Ct. 450, 98 L. Ed. 654 (1954) ("In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror *during a trial about the matter pending before the jury* is, for obvious reasons, deemed presumptively prejudicial[.]") (emphasis added).  In addition, Levitan has not identified any pretrial publicity concerning the nature of his criminal charges or him personally.  Although Morgan presumably greeted every prospective juror, his comments were not inflammatory and did not suggest Levitan was guilty or even acknowledge Levitan's case.

Next, despite Mr. Levitan's insistence that Morgan's conduct tended to make jurors more sympathetic to law enforcement, he has not produced evidence that any employees of the Escambia County Sheriff's Office actually testified at his criminal trial.  Sheriff Morgan did not testify at the trial, (doc. 230-11, p. 16; doc. 267-3, p. 121), and there is no evidence Morgan attended.  Levitan does not recall anyone from

the Escambia County Sheriff's Office testifying at the trial.  (Doc. 230-11, p. 16).

The briefs submitted to the First District Court of Appeal do not indicate any law

enforcement officer testified as a witness.  *See* Initial Brief of Appellant, 2012 WL

12247242; Answer Brief of Appellee, 2012 WL 12247243; Reply Brief of Appellant,

2012 WL 12247244.  Levitan's failure to produce evidence showing any law

enforcement officer actually testified at his trial undermines the claim of inherent

prejudice.  In addition, the nature of Levitan's criminal case was not such as to

suggest any sort of tension between law enforcement and the defendant.  Instead,

Levitan was convicted of a scheme to steal from a corporate entity.  Affinity, or lack

thereof, to law enforcement agencies or officers could not logically have played any

role.

Nevertheless, Levitan repeatedly asserts Sheriff Morgan was the individual

who decided to bring criminal charges against him.  (Doc. 267, p. 3, 9, 12, 18, 36).

To support this claim, Levitan indicates that an investigator from the Escambia

County Sheriff's Office informed Levitan and his defense counsel over a conference

call that the investigator "was being told to bring these charges from up top[.]"  (Doc.

267, p. 9 n.10).  Levitan claims that by using the phrase "up top," the investigator was

"alluding to [Morgan]." (*Id.*).

Case No. 3:12cv117/MCR/CJK

Levitan's description of the conference call fails to demonstrate Morgan had any involvement in the investigation of Levitan.   The investigator never actually stated Morgan was involved in the investigation.   In addition, the investigator's description of what he was told from "up top" is inadmissible hearsay when offered, as it is here by Levitan, to prove its truth.   Furthermore, the evidence in the record establishes the contrary – that Morgan was not personally involved in the investigation of Levitan.   During his deposition, Morgan indicated he did not have any knowledge of Levitan's case.  (Doc. 267-3, p. 52) ("Again, my only knowledge of you and your case is I do recall your name being mentioned as filing an inordinate amount of complaints at the jail.  But your case specifically, I have no knowledge of your case.").  The recitation of facts in *Levitan v. State*, 100 So. 3d 776, 777-78 (Fla. 1st DCA 2012), indicates a company known as Total Employee Leasing ("TEL") referred the matter to the State Attorney's Office after Levitan failed to reimburse TEL for paying the employees of a restaurant Levitan operated.  In sum, Levitan has failed to offer any evidence to support the assertion Morgan was personally involved in the investigation that led to the charges in *State of Florida v. Daniel J. Levitan*, Case No. 2009 CF 001932A.

Next, Levitan claims Morgan's "conduct is inherently prejudicial [where] there is no record of what occurred at the meetings other then the undisputed fact that [Morgan] had unauthorized contact with jurors that judged the underlying criminal case where [Levitan] was convicted." (Doc. 267, p. 19). The voir dire transcript, however, confirms Morgan simply engaged in his standard practice of greeting jurors and thanking them for their service. *See* Fed. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.").

This case does not present the type of "rare" and "extreme" situation where prejudice is presumed. *Wood*, 923 F.2d at 1459-60 (noting successful claim of presumed prejudice requires meeting an "extremely high standard" and presumed prejudice "rarely occurs"). In the context of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, this court recently addressed a claim that Sheriff Morgan's interactions with prospective jurors denied the petitioner a fair trial by an impartial jury. *Henretty v. Jones*, Case No. 3:14cv177/LAC/EMT, 2015 WL 7963854, at *20-23 (N.D. Fla. Nov. 12, 2015) *report and recommendation adopted*

*by* 2015 WL 8055954 (N.D. Fla. Dec. 4, 2015).  The court in *Henretty* found:

> No United States Supreme Court holding embodies the legal principle at issue in Ground Nine–whether a senior elected public law enforcement official's pre-trial contact with prospective jurors in the nature described by Petitioner is so inherently prejudicial that it deprives the defendant of a fair trial.  Given the lack of holdings from the Supreme Court on the issue Petitioner raises, the First DCA's rejection of Petitioner's constitutional challenge to the Sheriff Morgan's practice was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

*Id*. at *22; *see also* 28 U.S.C. § 2254(d)(1).  The court, however, went on to note that the petitioner's claim also failed when considering whether the state court's denial of petitioner's appeal involved an unreasonable application of Eleventh Circuit precedent:

> As previously discussed, with regard to presumed prejudice, the court must examine whether: (1) the event at issue was sufficiently prejudicial and inflammatory; and (2) the event saturated the pool of potential jurors.  Petitioner argues that Sheriff Morgan's greeting the prospective jurors was the equivalent of Petitioner's mother greeting them, which absolutely would not have been tolerated by the court. However, Petitioner's analogy goes too far.  There is no indication in the record that either Sheriff Morgan or the Escambia County Sheriff's Office had any connection to Petitioner's case.  Nor is there any indication that Sheriff Morgan mentioned any particular case. In light of the circumstances presented to the First DCA, the court reasonably could have determined that Petitioner failed to show that Sheriff Morgan's contact was so insidious as to raise the presumption that any venire person exposed to it was rendered incapable of giving Petitioner a fair trial.

*Id*. at *22-23 (footnotes omitted).

In similar cases, the Court of Appeals of Georgia has declined to find that dismissal of a jury panel is required after a sheriff greets prospective jurors. *See Marsh v. State*, 562 S.E.2d 269 (Ga. Ct. App. 2002); *Jones v. State*, 524 S.E.2d 773 (1999); *House v. State*, 515 S.E.2d 652 (Ga. Ct. App. 1999). In *House v. State*, a criminal defendant appealed his convictions for armed robbery and possession of a firearm by a convicted felon. 515 S.E.2d at 654. At trial, the defendant moved to dismiss the venire, claiming the Hall County Sheriff's practice of greeting citizens violated his constitutional right to a fair and impartial trial. *Id.* at 655. The defendant noted that as citizens entered the courthouse for jury duty, the Sheriff shook their hands, asked them how they were doing, and spoke with them about other minor pleasantries. *Id*. The defendant argued, as Levitan does here, that the Sheriff's actions "allegedly 'tainted' the venire in that the jurors may have been influenced to look more favorably upon law enforcement[.]" *Id.* The Court of Appeals of Georgia concluded the trial court's denial of the defendant's motion did not constitute reversible error. *Id.* The appellate court explained its decision:

> Contrary to House's assertions, we do not find that the Hall County Sheriff's attempts to have prospective jurors, i.e., voters, look favorably upon *him*, means that the same jurors will look unfavorably upon House. The sheriff was neither a witness, nor did he act as bailiff during the trial

of this case.  The record shows that the Sheriff's greeting was brief, personal, and referenced no case or legal matter.  The jurors to whom the sheriff spoke were *prospective* only and had not been empaneled in this or any other case.  In fact, House concedes that the sheriff's traditional courthouse greeting is in the nature of "pure politicking."  Accordingly, "the character of the communication clearly shows that it could not have been prejudicial to the accused" upon the trial of his case.  *Collins v. State*, [191 Ga. App. 289, 290,] 381 S.E.2d 430 [(1989)].

*Id.*  In a footnote, the court also observed:

Notably, when the instant jury panel was selected from the venire and seated for voir dire purposes, House's attorney specifically asked the members whether the Sheriff's greeting would have any effect whatsoever upon their deliberations.  To a man and woman, the answer was no.

*Id.* at 655 n.2.[8]

---

[8] In his November 4, 2010 letter to Judge Terrell, Sheriff Morgan cited *House v. State* to support the claim that his contact with jurors was not legally objectionable.  (Doc. 230-5, p. 2).  In a reply email dated November 5, 2010, Judge Terrell indicated the holding in *House* was contradicted by *Marsh v. State*, 562 S.E.2d 269 (Ga. Ct. App. 2002).  In *Marsh*, the defendant objected to "(1) the sheriff greeting prospective jurors as they entered the jury assembly room; (2) the district attorney addressing the jury pool in the jury assembly room; and (3) the judge addressing the jury pool in the jury assembly room." *Id*. at 270.  The trial judge examined the jurors to determine whether any pre-trial contact occurred and whether it would undermine their ability to serve as fair and impartial jurors.  *Id.*  After no juror responded affirmatively, the trial court declined to dismiss the jurors.  *Id.*  The appellate court also concluded dismissal was not required:

We do not condone the conduct of the sheriff and district attorney, which might predispose jurors to favor the State.  Although we are not troubled by the conduct of the trial judge–who is presumed to be impartial–such conduct, in concert with that of the sheriff and district attorney, might be construed as presenting a united front.  Despite these concerns, we nonetheless conclude that the trial court did not abuse its discretion in refusing to dismiss the jury panel.  Where, as here, the government officials do not say anything to jurors regarding a specific case, but only make general comments or questions, dismissal is not required.

Based on the facts of this case and the relevant case law, Morgan's conduct was not so extreme as to be inherently prejudicial.  Because Levitan has failed to establish either actual or inherent prejudice, his claim that Morgan denied his right to a fair trial fails.

C.    Equal Protection

Count II of Levitan's complaint alleges Sheriff Morgan violated his equal protection rights.  (Doc. 58, p. 18).  The Equal Protection Clause requires the government to treat similarly situated people in a similar manner.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).  To establish an equal protection violation, a plaintiff must demonstrate that he is similarly situated to others who received more favorable treatment, and that his discriminatory treatment was based on some constitutionally protected interest, such as race.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001).

In his deposition, Levitan claimed he was treated differently than similarly situated individuals "[b]ecause not everybody else has somebody for the sheriff's office meeting with your jurors in a criminal trial."  (Doc. 230-11, p. 18).  According to the evidence, however, Sheriff Morgan did meet with prospective jurors in

---

*Id.* (citations omitted).  Thus, *Marsh*–where even the prosecuting attorney addressed the venire–does not undermine the holding in *House*.

Escambia County regularly after he became Sheriff for a period of several years. Thus, Levitan was treated the same as nearly every other defendant in Escambia County.  Levitan has failed to establish an equal protection claim.

D.     Access to the Courts

Count IV of Mr. Levitan's complaint alleges he was denied access to the courts in violation Article I, § 21 of the Florida Constitution, which provides "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."  As Morgan notes, the only allegation in the complaint related to a potential access to the courts claim states "Defendants used Levitan's jailing to inhibit use of favorable witnesses, to hold meaningful discovery, coupled with the juror influence was denied due process and access to the courts convicting Levitan and injuring him in the process."  (Doc. 58, p. 8).

Although "[c]riminal defendants have a fundamental, constitutional right to adequate, effective, and meaningful access to the courts," *Henry v. State*, 124 So.3d 958, 959 (Fla. 5th DCA 2013) (*citing Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977)), Levitan has failed to provide any evidence that Morgan limited his access to the courts.  Moreover, Levitan was represented by counsel during his criminal trial.  Levitan's access to the courts claim, therefore, is

meritless.

III.   Defendant Aiken

After making reasonable efforts, the court has been unable to effect service of process on defendant Larry Aiken.  Levitan's complaint merely seeks to hold Aiken liable on the basis that he assisted Morgan in conducting meetings with prospective jurors.  (Doc. 58).  Because Morgan's actions did not violate Levitan's rights, however, the claims against Aiken should also be dismissed with prejudice.

CONCLUSION

Applying the correct standard, the undisputed evidence establishes that Sheriff Morgan's conduct did not violate Levitan's right to a fair trial.  Levitan has also failed to establish an equal protection violation or an access to the courts claim.[9]

Accordingly, it is ORDERED:

1.      Plaintiff's "Motion for One Day Enlargement of Time to File Plaintiff's Opposition to Defendant's Motion for Summary Judgment" (doc. 266) is GRANTED.

2.      Plaintiff's "One Time Motion to Exceed Page Limitations" (doc. 268) is GRANTED.

---

[9] Because Levitan has not established a constitutional violation, his official capacity claims against Sheriff Morgan also fail.  *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

Case No. 3:12cv117/MCR/CJK

3.       Plaintiff's "Motion to File Cross Motion for Summary Judgment Out of Time" (doc. 269) is DENIED.

And it is respectfully RECOMMENDED:

1.       That defendant Morgan's motion for summary judgment (doc. 230) be GRANTED.

2.       That plaintiff's claims against defendant Aiken be DISMISSED WITH PREJUDICE.

3.       That the clerk be directed to enter judgment in favor of defendant Morgan and against plaintiff and close the file.

At Pensacola, Florida, this 25th day of February, 2016.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.   A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 3:12cv117/MCR/CJK